David Ray STUTES, Appellant,

v.

The STATE of Texas, Appellee.

No. 50158.

Court of Criminal Appeals of Texas.

Dec. 3, 1975.

Paul W. Jones, Jr., Austin, on appeal only for appellant.

Robert O. Smith, Dist. Atty., David A. Sheppard, Asst. Dist. Atty., Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for robbery by firearms.[1] Appellant was tried before a jury and received a sentence of fifteen (15) years' imprisonment. The offense took place on August 8, 1973 and trial began on November 12, 1973.

The evidence showed that appellant robbed Charles Schreiber, assistant manager of the Safeway Food Store at 5335 Airport in Austin at gun point on August 8, 1973. Another employee of the store, Don Ellis, followed the gunman and a companion to the parking lot where they got into a late-model pickup truck and sped away. A third employee, Rodney Felfe, noticed the two robbers loitering in the store prior to the robbery and was able to follow them in his car as they drove east out of town.

Just west of McDade the pickup stopped, blocking the road. Felfe stopped behind the pickup and his engine died. The two robbers got out of the pickup truck and walked toward Felfe's car, returned to the truck, and rammed it into Felfe's car, disabling it. The truck then continued in the direction of Houston.

Appellant's companion was identified as Larry McKay, in whose possession the pickup truck was subsequently found. McKay was tried jointly with appellant, received a ten (10) year sentence, but apparently declined to appeal.

William Ewing testified as an alibi witness for both defendants. But the witness Schreiber recognized him as being the third man involved in the robbery and he was arrested outside the courtroom during the course of the trial.

Appellant's first ground of error concerns the trial court's failure to sustain his objection to questions concerning his prior arrests. During his cross-examination of appellant, the prosecutor asked the following questions:

1. Under the terms of Art. 40.09, Sec. 10, V.A.C.C.P., the State's brief was due on November 22, 1974. However, no request for an extension of time for filing said brief was made until February 7, 1975, at which time the trial court gave the State until February 28, 1975. The State did nothing else until March 21, 1975 when it requested and received another retroactive extension of time until March 21, 1975 for filing its brief. The State's brief was then filed on March 21, 1975. The majority does not agree, but I believe that unless these extensions of time are given retroactive effect the State's brief is not before us for review. See *Coleman v. State*, 530 S.W.2d 823 (1975). Since extensions of time for filing appellant's briefs have been given retroactive effect in *Bradley v. State*, 414 S.W.2d 673 (Tex.Cr.App. 1967), I would accord the same treatment to the State in the interest of even-handed justice under law and consider its brief on appeal.

"Q Where were you on the 19th cf July, approximately 9:25 p. m., 1973?

"MR. BAIRD: Your Honor, I object to that as being immaterial to this case here.

"THE COURT: Overrule the objection.

"Q Do you remember where you were?

"A I don't remember where I was, no.

"Q Do you remember who you were with on that occasion?

"A Yes, sir. Yes, I remember who I was with. I was right off of Bowman Street. We had taken a motorcycle back to a kid's house, and it got stolen, and we found it and took it back for him.

"Q Why do you remember that as being the 19th day of July?

"A Because they picked us up right after we brought it back.

"Q What did they pick you up for?

"A Stolen motorcycle.

"Q Picked you up for stealing it?

"A No, sir. Well, they picked us up and charged us, but dropped it because we didn't steal it.

"Q I see. Do you remember where you were and who you were with on the 18th of July, 1973, approximately 9:50 p. m.?

"A I don't know about the times, but I know the people I was with that night before I got picked up.

"Q You got picked up on that night, too?

"A I don't know. I don't know what day that was. I got picked up one time, sometime right at the last of July.

"Q Now, you testified you got picked up on the 19th. That was a Thursday, according to that calendar over there on the wall.

Now, on the 18th of July at approximately 9:50 p. m., where were you?

"A I was in jail, if that was the day I got picked up.

"Q Well, you didn't get picked up both on the 18th and 19th, did you?

"A I got picked up right there at the last of July one day, and then I got put in jail.

"Q So you were somewhat confused about those days. Is that right?

"A That is right. I don't know what day I got picked up. It was the last of July.

"Q Do you remember where you were and who you were with at approximately 8:55 p. m. on the 15th of June, 1973?

"A No, sir."

The prosecutor's questions were designed to impeach appellant with clearly inadmissible prior arrests, none of which was ever shown to have resulted in a final conviction. As appellant contends, a more obvious violation of Art. 38.29, V.A.C.C.P. would be hard to imagine.

However, appellant objected only once; and then to a question about his whereabouts on a certain day. Neither the question nor the objection, which was too general, *Smith v. State,* 513 S.W.2d 823 (Tex.Cr. App.1974), was sufficient to apprise the trial judge of the forthcoming inadmissible testimony. It was not until three or four questions later that appellant's arrest came out. His objection was therefore untimely. *Ward v. State,* 522 S.W.2d 228 (Tex.Cr.App. 1975). This ground of error must be overruled.

■ Appellant next contends that the court erred in admitting Sgt. Robert Napier's testimony concerning statements made to him by the witness Ewing after his arrest. It will be remembered that Ewing testified as an alibi witness for both defendants, and then was arrested outside the courtroom after his testimony. As he was being booked on the robbery charge by Sgt. Napier, he allegedly stated that his earlier alibi testimony had been untrue and that

the defendants or the attorneys had set him up. He was then recalled to the stand by the State and, after momentarily claiming his Fifth Amendment privilege, testified that he stood by his earlier alibi testimony. It was at this time that the State offered Napier to impeach Ewing.

Both parties seem to be in agreement that Napier's testimony was hearsay, although appellant's objection did not urge this ground. It is noted, however, that Napier's testimony fitted the exception to the hearsay rule for declarations against interest.

At the outset, we must determine if appellant's objection to Napier's testimony was sufficient to preserve the alleged error. The record shows that when Napier was asked about Ewing's extra-judicial statements, appellant's counsel stated, "Your Honor, I am going to object to any testimony, because he was under arrest at the time. That would be immaterial." The objection on the grounds of immateriality was clearly not well taken, since appellant himself admits that Napier's testimony practically scuttled his entire alibi defense. The objection on the grounds that appellant was under arrest has specifically been held sufficient to preserve for review the question of the admissibility of such statements. *Korb v. State,* 402 S.W.2d 166 (Tex.Cr.App.1966). The objection in the instant case was sufficient to apprise the trial court of the ground urged—that Ewing's statement was an inadmissible confession under Art. 38.22, V.A.C.C.P. There can be no other reasonable interpretation of appellant's objection.

■ It has been suggested that Napier's account of Ewing's statement might run afoul of the proscriptions of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). That case prohibited the introduction of one defendant's confession which implicated a co-defendant in the case when both were being tried jointly. Whatever the merits of the *Bruton* question, it is apparent that appellant's trial objection did not preserve it for review.

*Bruton* was based on the Sixth Amendment right to confrontation while appellant's objection, referring to the statement he made while under arrest, invoked Art. 38.22 and his Fifth Amendment right against self-incrimination.

Having concluded that appellant's complaint based on Art. 38.22 is before us for review, we must first determine if Ewing's alleged extrajudicial statement amounted to a confession for purposes of the confession statute. In *Easley v. State,* 493 S.W.2d 199 (Tex.Cr.App.1973), this Court wrote:

"[W]e adhere to a high standard in holding that admissions of an accused made while in custody *must* (emphasis in opinion) satisfy the rule as to confessions in order to be admissible. *Garner v. State,* 464 S.W.2d 111 (Tex.Cr.App.1971). This Court, in construing our confession statutes, has further excluded any act tantamount to or in the nature of a confession and any unwarned statement even though it lacks the essential elements of a confession."

Although Ewing's alleged statement made no mention of the robbery for which he was then under arrest, it was a clear admission that he had just committed perjury on the witness stand. It therefore had sufficient incriminating and inculpatory content to come within the ambit of Art. 38.22, V.A.C.C.P. See *Butler v. State,* 493 S.W.2d 190 (Tex.Cr.App.1973); *Martinez v. State,* 498 S.W.2d 938 (Tex.Cr.App.1973) (concurring opinion); *Beam v. State,* 500 S.W.2d 802 (Tex.Cr.App.1973); *Smith v. State,* 514 S.W.2d 749 (Tex.Cr.App.1974).

■ It is true that a confession of guilt can only be used against the person making the confession and is inadmissible against others under the hearsay rule. *Lewis v. State,* 521 S.W.2d 609 (Tex.Cr.App.1975); *Carey v. State,* 455 S.W.2d 217 (Tex.Cr.App. 1970). Ewing's admission in this case, however, was not admitted to implicate appellant and did not do so; rather it was admitted to impeach Ewing. Art. 38.22, V.A.C.C.P. need not be complied with in order to

introduce a confession against a witness for impeachment purposes, *Castillo v. State,* 421 S.W.2d 112 (Tex.Cr.App.1967), even though the same confession might be inadmissible to impeach the same witness at his own trial. *Butler v. State, supra; Martinez v. State, supra*; cf. *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). We hold that *Castillo* controls even though it did not appear that the witness there was a co-defendant, or a potential co-defendant, of the appellant in that case. That fact would raise *Bruton* problems not preserved in this appeal. The State correctly concludes in its brief, "In short, Art. 38.22 would be available to Ewing, at *his* trial, but the statute's protection is simply not available to appellant."

Therefore, the court did not err in permitting Napier to testify as to Ewing's alleged statement. Appellant's second ground of error is overruled.

In his third and fourth grounds of error, appellant claims the court fell into fundamental error by failing to exclude the testimony of certain witnesses about appellant's membership in a motorcycle gang called the Deadmen's Club and about the criminal record of Russell Eason, a companion of appellant. Appellant made no objection to any of the complained of testimony at trial; thus nothing is presented for review. *Johnson v. State,* Tex.Cr.App., 525 S.W.2d 170 (1975); *Wood v. State,* 511 S.W.2d 37 (Tex.Cr.App.1974). Nor do we think the testimony was of such a prejudicial nature as to constitute fundamental error.

Appellant next urges the cumulative effect of the foregoing alleged errors. Besides finding no error that can be cumulated in this record, we note this ground of error is not in compliance with Art. 40.09, Sec. 9, V.A.C.C.P. *Moulton v. State,* 486 S.W.2d 334 (Tex.Cr.App.1972).

Appellant lastly contends that he was denied the effective assistance of counsel at his trial. Appellant's trial counsel was retained, and he argues that this Court should abolish the distinction in the standard of effectiveness for retained and appointed counsel. See *Kennedy v. United States,* 259 F.2d 883 (5th Cir. 1958) and *Guerrero v. State,* 487 S.W.2d 729 (Tex.Cr.App.1972) on retained counsel; *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir. 1960), cert. den. 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961) and *Ex Parte Gallegos,* 511 S.W.2d 510 (Tex.Cr.App.1974) on appointed counsel. Appellant also suggests that counsel's representation of both appellant and his co-defendant McKay gave rise to a conflict of interest resulting in ineffective assistance of counsel. See *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

It is true that where an appointed counsel has an actual conflict of interest a defendant is denied his right to effective representation without a showing of specific prejudice. *Castillo v. Estelle,* 504 F.2d 1243 (5th Cir. 1974). But where counsel is retained, there is no ineffectiveness on such grounds unless the attorney's representation was fettered or restrained by his commitments to others, and such commitments were unknown to the defendant. *Randazzo v. United States,* 339 F.2d 79 (5th Cir. 1964). In the case at bar, we have neither an actual conflict of interest nor an appellant ignorant of any potential conflict of interest. Nor is appellant's showing of prejudice very convincing. The fact that McKay got ten (10) years and appellant fifteen (15) could be attributable to the fact that it was appellant who wielded the weapon and told Schreiber, "I mean it. I'll blow you open." And the failure of counsel to examine appellant as long as he did McKay was obviously because appellant testified second, corroborating McKay's prior testimony. There was no need to reiterate the alibi defense which was common to both defendants. There is no indication in this record of any conflict of interest between McKay and appellant.

The issue of which standard for effectiveness of counsel should be applied is squarely

joined by the parties in their briefs. However, we need not reach that issue since appellant's counsel was not ineffective by even the stricter standards applicable to appointed counsel. We decline to take up each instance of ineffectiveness alleged in appellant's brief, since the quality of representation is to be judged by the "totality of the representation." *Williams v. State,* 513 S.W.2d 54 (Tex.Cr.App.1974); *Lee v. State,* 505 S.W.2d 816 (Tex.Cr.App.1974). The record shows that appellant's attorney played an active role in the defense of his client. He cross-examined all of the State's witnesses extensively; he put on six witnesses of his own to establish the defense of alibi; and he called numerous other witnesses at the guilt-innocence and punishment stages. We conclude that, under either standard, appellant was not denied the effective assistance of counsel.

Appellant's grounds of error are overruled and the judgment is affirmed.

ONION, P. J., and MORRISON, J., concur in affirmance of this conviction.